SAM W. JACKSON v. L.G. DEWITT TRUCKING COMPANY, EMPLOYER, AND AETNA LIFE & CASUALTY INSURANCE COMPANY, CARRIER

No. 8610IC52

(Filed 5 August 1986)

1. **Master and Servant §§ 73.1, 94.1— workers' compensation—loss of vision—expert testimony—Industrial Commission's finding unsupported by evidence**

In a workers' compensation proceeding where the evidence was that plaintiff splashed diesel fuel in his eye, rubbed it vigorously, suffered hemorrhaging in the eye, and subsequently lost his vision, and where an expert medical witness testified that the rubbing of the eye "more likely than not" to a "reasonable degree of medical certainty" caused the subsequent hemorrhagic central retinal vein occlusion, the critical finding of the Industrial Commission that the witness testified only that the rubbing "possibly could have caused the condition he diagnosed" was not supported by competent evidence and is overturned.

2. **Master and Servant §§ 73.1, 94.1— workers' compensation—employee's rubbing of eye—loss of vision—finding as to causation required of Commission**

In a workers' compensation proceeding the Industrial Commission was required to make a specific finding as to whether plaintiff's vigorous rubbing of his eye significantly caused, aggravated, accelerated, or precipitated a hemorrhagic central retinal vein occlusion, and plaintiff would be entitled to compensation even if he had a predisposition toward developing this condition.

APPEAL by plaintiff from the opinion and award of the North Carolina Industrial Commission entered 15 July 1985. Heard in the Court of Appeals 15 May 1986.

*Vickory & Hawkins, by C. Branson Vickory, for plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by C. Ernest Simons, Jr. and Robin K. Vinson, for defendant appellee.*

BECTON, Judge.

In this workers' compensation case, the plaintiff, Sam W. Jackson, sought compensation for the loss of sight in his left eye. The Industrial Commission denied his claim, and Mr. Jackson appeals. We reverse and remand.

I

On 6 August 1983, Mr. Jackson was working as a long-distance truck driver for defendant L.G. DeWitt Trucking Company.

Mr. Jackson was driving a tractor with a refrigerated trailer filled with produce. While in Oklahoma, Mr. Jackson stopped to check the temperature in the trailer. He discovered that the refrigeration unit had stopped because it had run out of fuel. While refueling the refrigeration unit by siphoning diesel fuel from the tractor, diesel fuel splashed into Mr. Jackson's eyes.

Mr. Jackson immediately began to rub his eyes vigorously. He attempted to remove the fuel with paper towels, water and commercial eye drops. Within hours, the vision in his left eye began to blur, and it continued to deteriorate. By 23 August 1983, he could no longer use his left eye, and he stopped driving the tractor.

## A

On 24 August 1983, Mr. Jackson sought medical attention for his eye. He was examined by Dr. Charles Zwerling, an ophthalmologist. Dr. Zwerling's diagnosis of Mr. Jackson's eye condition was that he had suffered a hemorrhagic central retinal vein occlusion which was caused by the vigorous rubbing of the eye after the fuel had splashed into it. On Dr. Zwerling's recommendation, Mr. Jackson went to another ophthalmologist, Dr. James Holland, on 1 September 1983 for a second opinion. Dr. Holland concurred in the diagnosis of hemorrhagic central retinal vein occlusion.

Because they were surprised to see this type of condition in a person of Mr. Jackson's age (49), Drs. Holland and Zwerling agreed that Mr. Jackson should see a board-certified internist, Dr. James Stackhouse, to determine whether an underlying disease caused the occlusion. Dr. Stackhouse found no condition in Mr. Jackson that might have caused the occlusion.

Drs. Zwerling and Holland testified as experts before the deputy commissioner. Dr. Zwerling explained that hemorrhagic central retinal vein occlusions rarely occur in people under the age of 60 or 65. It usually occurs, for example, in older people with pre-existing conditions such as hyperviscosity syndrome, glaucoma, severe artery disease, or diabetes. Mr. Jackson had no history of any of these diseases or conditions. Dr. Zwerling testified that, based in part on his findings (and the findings of Drs. Holland and Stackhouse) that Mr. Jackson had no apparent predisposing factor or underlying disease causing the condition, "It

was the rubbing of the eye from getting the fuel in the eye that caused the hemorrhage. This is my professional opinion." He continued:

> [O]ne of the severe complications from central retinal vein occlusion, this is well documented in the literature by Dr. Hayre and his Associates, there are numerous articles on this, it is something called 90 day glaucoma and that is to say that after a serious injury of this nature, where the vein burst open and you have all this hemorrhage, anytime between that time of the injury and 90 days you can form abnormal blood vessels which can bleed again and cause more hemorrhaging and you run into a snowball effect and you can end up loosing [sic] the eye. The only treatment for this is laser treatment . . . I treated him with laser treatment according to the standard protocols of the American Academy of Ophthalmology and he had excellent results, . . . but unfortunately Mr. Jackson still has no vision in the eye and he never will. The eye is permanently disabled.

Dr. Zwerling also testified that there are cases documented in medical literature of hemorrhagic central retinal vein occlusions caused by placing too much pressure on the globe of the eye during retinal detachment surgery or hitting a blood vessel in the back of the eye with a needle during cataract surgery. And although he found no cases in which rubbing the eye caused such a hemorrhage, he gave the following testimony:

> To a reasonable degree of medical certainty, I believe in what Mr. Jackson has told me to be true and I believe it's quite possible that given the condition where they rub their eye that vigorously from getting diesel fuel, in which I have never had diesel fuel but I have had other things get in my eye and it hurts, you know, gasoline, what have you, and you can rub your eye hard enough, it is quite potentially possible, we would never really know unless we took a bunch of humans and said rub your eyes hard as you can or you know, we don't do that in this society but we have done this with lab animals and we have been able to induce central retinal vein occlusions by putting pressure on the eye, this is documented by Dr. Hayre out in the midwest, who is a professor and leading expert on this.

At the end of Dr. Zwerling's testimony, the deputy commissioner asked him to clarify his opinion:

Q. Explain to me what you mean by possible?

A. Giv[en] my experience as an eye surgeon, in witnessing complications of eye surgery, that is to say retinal detachment surgery, cataract surgery, what have you, in which there is often a certain amount of pressure placed on the globe or the eyeball itself, I have seen cases myself personally where hemodynamic complications have occurred, arterial and venus occlusions have occurred. I have seen someone just walk off the street where this happened, where they "did to themselves," —

Q. Do you mean by possible, to a reasonable degree of medical certainty?

A. To a reasonable degree of medical certainty, I believe —

Q. Does that mean more likely than not?

A. More likely, yes, than not.

Dr. Holland also testified that Mr. Jackson's condition is very unusual at his age with no history of an underlying disease associated with the condition and no indication of a penetrating trauma. He agreed that while there are documented cases of "penetrating" trauma, such as a needle puncturing the eye, causing this type of hemorrhage, there are no documented cases of a blunt, "non-penetrating" trauma, such as rubbing or hitting the eye, causing such a hemorrhage: "To my knowledge, blunt, non-penetrating trauma has never been associated with a central retinal vein occlusion."

Dr. Holland further testified that patients sometimes recognize they have vision impairment only after some unrelated incident involving the eye when, in fact, the onset of the impairment might have occurred before the incident. He also testified that his examination on 1 September 1983 revealed that Mr. Jackson had a slightly elevated pressure in his eyes. According to Dr. Holland, 24 is considered normal pressure. On 24 August 1983, Dr. Zwerling had found Mr. Jackson's eye pressure to be 20 in each eye, which is also considered normal. On 1 September 1983, the pressure was 26 in the right eye and 28 in the left. This is considered

in the high range of normal. According to one medical theory, high pressure in the eye may be connected with the development of vein occlusions. But because there is no conclusive support for this theory, and because Mr. Jackson's pressure was normal on 24 August and only "moderately elevated" one week later (and a person's eye pressure tends to vary according to time of day and stress), Dr. Holland could not say to a reasonable degree of medical certainty whether this condition predated the 6 August incident. He also could not say to a reasonable degree of medical certainty either that the rubbing of the eye caused or that it did not cause the hemorrhagic central retinal vein occlusion.

B

The parties stipulated that Mr. Jackson suffered an injury by accident while on the job—namely, that fuel splashed in his eyes resulting in burning and itching and causing him to rub his eyes. The deputy commissioner found as fact:

> 6. . . . . . It was Dr. Zwerling's opinion that the rubbing of plaintiff's eye subsequent to the introduction of the diesel fuel possibly could have caused the condition he diagnosed.
>
> . . . .
>
> 8. On August 6, 1983, plaintiff sustained an injury as the result of an interruption of his normal work routine by the introduction of an unusual condition likely to result in unexpected consequences. This injury, the subsequent burning and itching of plaintiff's eye, was however transient. Plaintiff's hemorrhagic central retinal vein occlusion was not causally related to plaintiff's injury, but only temporally related thereto.

And he made the following conclusions of law:

> 1. On August 6, 1983, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer, however, this injury did not result in any compensable consequences. G.S. 97-2(6).
>
> 2. Plaintiff's hemorrhagic central retinal vein occlusion was not caused or aggravated by the injury by accident on August 6, 1983 but was only temporally related thereto. G.S. 97-2(6).

The deputy commissioner denied compensation, and a majority of the Commission, Commissioner Clay dissenting, adopted and affirmed his opinion and award.

## II

[1]  As an initial matter, we conclude that the quoted portion of the sixth finding of fact materially misstates Dr. Zwerling's testimony. The deputy commissioner elicited the clear opinion of Dr. Zwerling at the hearing that the rubbing of the eye "more likely than not," to a "reasonable degree of medical certainty," caused the hemorrhagic central retinal vein occlusion. Indeed, the only other expert testimony elicited at the hearing was equivocal on whether there was or was not a causal connection between the two events. The critical finding that Dr. Zwerling testified only that the rubbing "possibly could have caused the condition he diagnosed" is not supported by competent evidence. It is overturned. *Hundley v. Fieldcrest Mills*, 58 N.C. App. 184, 292 S.E. 2d 766 (1982) (findings of fact must be supported by competent evidence).

[2]  Next we consider Mr. Jackson's arguments that the Commission erred in its interpretation and application of N.C. Gen. Stat. Sec. 97-2(6) (1985), which provides in relevant part:

Injury.—"Injury and personal injury" shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident.

The Commission defined the injury to Mr. Jackson as the "burning and itching of plaintiff's eye," caused by the splashing of fuel. The Commission found and concluded that *this* injury was transient and did not cause or aggravate the hemorrhagic central retinal vein occlusion. This analysis is incomplete. It ignores the fact that the burning and itching caused Mr. Jackson to rub his eyes vigorously which, in turn, might have caused the hemorrhage. The medical testimony was clear that neither the fuel nor the burning and itching caused the hemorrhage. But, according to Dr. Zwerling, the rubbing of the eye more likely than not did cause the hemorrhage. We agree with Mr. Jackson that the vigorous rubbing of the eye was as much a natural and unavoidable consequence of the entry of fuel into the eye as was the burning

and itching. Therefore, the Commission must make a specific finding whether the vigorous rubbing was causally related to the hemorrhagic vein occlusion.

Mr. Jackson also argues that the Commission acted under a misapprehension of the law. Specifically, he argues that the Commission erroneously believed that if Mr. Jackson had a latent hemorrhagic central retinal vein occlusion before 6 August 1983, that it was necessarily a noncompensable disease under G.S. Sec. 97-2(6). The law is clear, however. Evidence that a work-related injury aggravated or accelerated a pre-existing condition or disease is sufficient to support a compensation award on the facts of this case. *See Wyatt v. Sharp*, 239 N.C. 655, 80 S.E. 2d 762 (1954) (pre-existing heart condition); *see also Weaver v. Swedish Imports Maintenance, Inc.*, 61 N.C. App. 662, 301 S.E. 2d 736 (1983) (Despite some evidence of arteriosclerosis and high blood pressure, claimant's heart attack was compensable injury by accident under G.S. Sec. 97-2(6) because it was precipitated by unusual exertion.).

The case at bar is distinguishable from cases cited by defendant in which there was at least some expert medical testimony that a pre-existing disease, and not the work-related activity, caused the disabling condition. *See, e.g., Bellamy v. Morace Stevedoring Company*, 258 N.C. 327, 128 S.E. 2d 395 (1962). No such testimony appears in the record of this case. Mr. Jackson had no apparent predisposition toward the condition; he was atypically young; and the physical development of the hemorrhagic vein occlusion was entirely consistent with the only medical explanation offered, which stated that the (work-related) rubbing caused the hemorrhage which then caused the other symptoms. Moreover, in the case at bar there is clear evidence of an obviously unusual and accidental event, rather than normal work activity, that might have caused the hemorrhage. *Compare Bellamy; King v. Exxon Company*, 46 N.C. App. 750, 266 S.E. 2d 37, *disc. rev. denied*, 301 N.C. 92, 273 S.E. 2d 299 (1980).

The Commission apparently believed Mr. Jackson's hemorrhagic central retinal vein occlusion was caused by a pre-existing disease. It found that the temporary burning and itching of Mr. Jackson's eye did not aggravate the occlusion. The Commission failed to make any findings or conclusions on whether the vigor-

Jackson v. L.G. DeWitt Trucking Co.

ous rubbing of the eye, which was a natural reflex flowing from the fuel-splashing accident on the job, caused, aggravated, accelerated, or precipitated claimant's condition.

Of course, it might have been simply fortuitous that the onset of the hemorrhagic vein occlusion followed soon after the vigorous rubbing. Nonetheless, it appears to this Court that the Commission erroneously believed Mr. Jackson's loss of sight in his eye was compensable only if both (1) the burning and itching directly caused the hemorrhagic central retinal vein occlusion and (2) Mr. Jackson did not have a predisposition toward such an occlusion. Neither condition is required. The Commission may award compensation in this case if it finds that the burning and itching caused Mr. Jackson, through a natural reflex, to vigorously rub his eyes and that the rubbing caused, aggravated, accelerated, or precipitated the hemorrhagic vein occlusion, even if Mr. Jackson were to have a predisposition toward developing this condition. In fact, in order to deny compensation, the Commission must find and conclude that the vigorous rubbing did not significantly cause, aggravate, accelerate, or precipitate the occlusion. *Cf. Jackson v. Fayetteville Area System of Transportation*, 78 N.C. App. 412, 337 S.E. 2d 110 (1985) (Conclusions must be supported by specific findings.).

### III

One of the medical expert witnesses testified to a reasonable degree of medical certainty that the vigorous rubbing caused the loss of sight in claimant's left eye. The other expert witness could not testify to a reasonable degree of medical certainty that the rubbing did, or that it did not, cause the loss of sight. We remand the case for the Commission to make fair and accurate findings of fact as to the specific content of Dr. Zwerling's testimony. The Commission is free to assess the credibility of the witness and to weigh the evidence. It must also make a specific finding as to whether the vigorous rubbing of the eye significantly caused, aggravated, accelerated, or precipitated the hemorrhagic central retinal vein occlusion.

For the reasons set forth above, we

Reverse and remand.

Judges ARNOLD and WELLS concur.